UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**LEOBARDO OVIEDO OLGUIN**

    **Petitioner,**

v.                                        Case No. 25-CV-1822

**DALE SCHMIDT**, *et al.*,

    **Respondents.**

---

## DECISION AND ORDER GRANTING
## WRIT OF HABEAS CORPUS

---

Leobardo Oviedo Olguin, a Mexican national who is currently detained at the Dodge County Detention Facility pursuant to a final order of removal, seeks a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Docket # 1.) He argues that his continued detention is unconstitutional under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Oviedo also filed a motion for a temporary restraining order seeking to enjoin the government from removing him to a third country without prior notice or opportunity to seek fear-based protections prior to removal. (Docket # 2.) The Government has responded in opposition. (Docket # 8.) On December 16, 2025, I heard oral arguments on the petition. For the reasons set forth below, the petition for a writ of habeas corpus is granted and because I decide the habeas petition on the merits, the motion for a temporary restraining order is dismissed as moot.

### BACKGROUND

Oviedo is a Mexican national who was raised in Guanajuato, Mexico. (Habeas Pet. ¶ 27, Docket # 1.) He entered the United States without inspection at an unknown place and time and was removed on September 6, 2019. (Declaration of Robert Podgorni ("Podgorni

Decl.") ¶¶ 7, 8, Docket # 9-1.) In 2020, he reentered the United States due to cartel members threatening his life, and he resumed work in roofing. (Habeas Pet. ¶¶ 27–28.) In August 2021, he suffered a two-story fall and sustained a traumatic brain injury. (*Id.* ¶ 29.) In the years following the accident, Oviedo has experienced mood swings, confusion, paranoia, head pain, and memory problems. (*Id.*) He has been diagnosed with mixed impaired cognition, depression, and post-traumatic stress disorder. (*Id.*)

In November 2023, Oviedo was arrested and charged with resisting arrest under Wis. Stat. § 946.41(1). (*Id.* ¶ 30.) He was convicted in February 2024 and was sentenced to 90 days in jail. (*Id.*) After completing his sentence, Oviedo was transferred to the custody of Immigration and Customs Enforcement ("ICE") at the Dodge County Detention Facility. (*Id.*) On May 23, 2024, the Department of Homeland Security ("DHS") reinstated the prior removal order and placed Oviedo in reinstatement proceedings pursuant to 8 U.S.C. § 1231(a)(5). (*Id.*) Oviedo expressed fear of returning to Mexico and was placed in withholding-only proceedings under 8 C.F.R. § 1208.31(g)(2). (*Id.*)

On April 28, 2025, Oviedo appeared with counsel for a merits hearing before an Immigration Judge ("IJ"). (*Id.* ¶ 33.) Oviedo explained that he feared returning to Mexico based on his severe mental illness, the risk of institutionalization and torture, and previous threats from the cartel. (*Id.*) DHS stipulated to relief, and the IJ simultaneously ordered Oviedo removed to Mexico and granted his application for withholding of removal under 8 U.S.C. § 1231(b)(3). (Order of the IJ, Docket # 1-1.) Withholding of removal protection prohibits removal to a country where a noncitizen's life or freedom would be threatened. 8 U.S.C. § 1231(b).[1] It does not, however, prohibit DHS from removing the noncitizen to any

---

[1] Throughout this Order, I use noncitizen and alien interchangeably.

other country authorized by statute. *See* 8 U.S.C. § 1231(b)(2)(E); 8 C.F.R. § 1208.16(f); *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021).

On April 29, 2025, DHS sent requests to Guatemala, Honduras, and El Salvador asking if they would accept Oviedo. (Podgorni Decl. ¶ 17.) Those requests have yet to be granted. (*Id.*) Oviedo remains detained at the Dodge County Detention Facility as of the date of this Order.

## ANALYSIS

In immigration-related proceedings, the Supreme Court has recognized 28 U.S.C. § 2241 petitions as a forum for statutory and constitutional challenges to detention orders. *Zadvydas*, 533 U.S. at 688. This authorizes federal courts to grant habeas relief to a detainee who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c)(3). In determining whether to grant such relief, the court may consider affidavits and documentary evidence such as records from any underlying proceeding. §§ 2246–2247.

Oviedo requests two distinct claims for relief. First, Oviedo alleges his continued detention violates the Immigration and Nationality Act ("INA") and is contrary to *Zadvydas* because his removal will not be executed in the reasonably foreseeable future. (Hab. Pet. ¶¶ 78–97.) Second, he alleges ICE's third-country removal policies violate his procedural due process rights, the Convention Against Torture ("CAT"), and the Administrative Procedure Act ("APA") insofar as the government is seeking to remove him to a third country without adequate notice and an opportunity to seek fear-based protections prior to removal. (*Id.* ¶¶ 98–109.) I will address each argument in turn.

1. *Zadvydas v. Davis*[2]

    1.1    Legal Standard

An alien ordered removed from this country generally must be removed within ninety days. 8 U.S.C. § 1231(a)(1)(A). This is called the "removal period." *Id.* During that period, the alien must be detained. *Id.* § 1231(a)(2). If not removed within the removal period, the alien is normally to be released under the government's supervision. *Id.* § 1231(a)(3). However, the Attorney General may continue to detain him beyond the removal period if the alien presents a risk to the community or is unlikely to comply with the order of removal. *Id.* § 1231(a)(6).

In *Zadvydas*, the Supreme Court addressed "whether [the] post-removal-period statute authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period or only for a period reasonably necessary to secure the alien's removal." 533 U.S. 678 at 682 (emphasis in original). The Court determined that the latter was the appropriate standard. *Id.* at 689. To find that the statute permitted indefinite detention would, in the Court's view, raise serious due process concerns. *Id.* at 690. Although the text of the statute says nothing about reasonableness, the Court read that limitation into it to avoid a collision with the Constitution. *See id.* at 690–98.

Thus, the Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In such a case, "the alien's release may and should be conditioned on any of the various forms of supervised release that

---

[2] Respondents filed a motion to file a surreply to clarify the timing of post-order continuing detention reviews of 8 C.F.R. § 241.4 that Oviedo raised in his reply brief. (Docket # 11.) The motion is granted. *Merax-Camacho v. U.S.*, 417 F. App'x 558, 559 (7th Cir. 2011) ("The decision to permit the filing of a surreply is purely discretionary and should generally be allowed only for valid reasons, such as when the movant raises new arguments in a reply brief.").

4

are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699–700. Further, if removal is reasonably foreseeable, "the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period." *Id.* at 700.

Additionally, the Court clarified that a presumptively reasonable period of detention for purposes of removal should not exceed six months. *Id.* at 701. Once that period expires, and once the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* The alien need not show "the absence of any prospect of removal—no matter how unlikely or unforeseeable," but merely that removal is not reasonably foreseeable. *Id.* at 702. Similarly, the government cannot rest solely on assertions of good-faith efforts to secure removal. *Id.* As the period of post-removal confinement grows, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* at 701. However, the six-month presumption "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

### 1.2  Administrative Exhaustion

Respondents argue Oviedo's *Zadvydas* claim fails because he did not exhaust his administrative remedies by following the administrative procedures of 8 C.F.R. § 241.13 before filing suit. (Resp. Br. at 13–19, Docket # 8.) Generally, parties must exhaust administrative remedies before turning to the federal courts for relief. *McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992). This general rule, however, is not absolute. *Gonzalez v. O'Connell*,

5

355 F.3d 1010, 1016 (7th Cir. 2004). Where Congress has not statutorily mandated exhaustion, "sound judicial discretion governs." *Id.* (internal quotation omitted). That discretion requires courts to "balance the individual and institutional interests involved," considering the nature of the claim presented and the administrative procedure provided. *Id.* Individual interests "demand" that exhaustion be excused when: "(1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised." *Id.* (citing *Iddir v. I.N.S.*, 301 F.3d 492, 498 (7th Cir. 2002)).

The pertinent regulations for requesting relief under *Zadvydas* are found at 8 C.F.R. § 241.13. Under this scheme, an eligible alien may submit a written request for release to the Headquarters Post-Order Detention Unit ("HQPDU") providing a basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(d)(1). The written request shall include information sufficient to establish the alien's cooperation with effecting his removal and obtaining necessary travel documents. *Id.* § 241.13(d)(2). An alien may submit the request at any time after the removal order becomes final. *Id.* § 241.13(d)(3). Respondents contend Oviedo failed to exhaust his administrative remedies because he did not comply with these procedures.

Oviedo's counsel emailed the Chicago Office of Enforcement and Removal Operations ("ERO") on May 5, 2025, requesting a timeline for Oviedo's release. (Docket # 1-4.) In the email, Counsel attached the IJ's order granting withholding protection and

6

requested, given Oviedo's mental illness, that she be given notice regarding the potential for removal to a third country so that she could evaluate a fear-based protection claim to that country. Counsel stated that Oviedo's mental illness was a principal reason he was granted protection, and together with his other mental conditions, his continued detention had been particularly difficult. And finally, counsel offered to provide information regarding Oviedo's medical history, treatment plan, and living arrangements to aid ERO in facilitating a timeline for release. (Docket # 1-4.) The ERO forwarded the email to ICE's headquarters, stating that "[a]s soon as [ICE HQ] makes a determination, we can coordinate next steps." (*Id.*) Based on his email and the ERO's response, Oviedo argues that he complied with the regulations.

Respondents contend counsel's email failed to comply with the regulations because it did not provide a basis to believe Oviedo would not be removed in the reasonably foreseeable future and did not supply information to establish Oviedo's cooperation with obtaining travel documents. (Resp. Br. at 15, n.7.)

I find that, even if I agreed with Respondents that Oviedo's submission did not satisfy every component of the regulation, requiring Oviedo to submit another request to ICE at this time would be futile and result in unreasonable delay. The ERO had already agreed to treat counsel's email as a request for release and stated that it forwarded the email to headquarters. Seven months later, ICE has still not responded. (Reply Br. at 4, Docket # 10.) A seven-month delay with no response suggests an "indefinite timeframe for administrative action." *Gonzalez*, 355 F.3d at 1016. Oviedo's detention already surpasses the six-month presumptively reasonable timeline for detention and continued detention at this juncture would present grave constitutional concerns. *See Salazar-Martinez v. Lyons*, 2025 WL 3204807, at *1 (D.N.M. Nov. 17, 2025) (finding administrative review futile where ICE had already conducted

7

custody review and decided to continue detention). As such, I proceed with the merits of Oviedo's *Zadvydas* claim.

### 1.3 Merits of *Zadvydas* Claim

#### 1.3.1 Six-Month Presumptive Deadline

The parties do not dispute that Oviedo's detention, going on eight months, has exceeded the six-month period that *Zadvydas* recognized as presumptively reasonable.

#### 1.3.2 Whether Removal is Reasonably Foreseeable

I consider next whether Oviedo's removal is reasonably foreseeable. As noted above, when Oviedo expressed fear of returning to Mexico he was placed in withholding-only proceedings under 8 U.S.C. § 1231(b)(3) and the CAT. Under the statute, the Attorney General must withhold removal to a particular country if the noncitizen's "life or freedom would be threatened" because of "race, religion, nationality, membership in a particular social group, or political opinion." *Id.* Oviedo was granted withholding protection in April 2025 and therefore cannot be removed to Mexico due to threat of persecution. Oviedo may, however, be removed to an alternative country under 8 U.S.C. § 1231 ("third-country removals"). Third-country removals are typically the only viable option for removal when noncitizens cannot be returned to their country of origin. (Resp. Br. at 6.) Oviedo asserts his removal to a third country is not reasonably foreseeable; thus, he should be immediately released under *Zadvydas*.

Oviedo must provide a good reason to believe his removal is not reasonably foreseeable. *Zadvydas*, 533 U.S. at 701. This initial burden may be met by either identifying institutional obstacles to repatriation or by showing particularized barriers impede removal to his country of origin. *Trejo v. Warden of ERO El Paso East Montana*, 2025 WL 2992187, at *5

(W.D. Tex. Oct. 24, 2025) (citations omitted); *Aguilar v. Noem*, 2025 WL 3514282, at *5 (D. Colo. Dec. 8, 2025) (citing *Dusabe v. Jones*, 2024 WL 5465749, at *3 (W.D. Okla. Aug. 27, 2024), *report and recommendation adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025)).

Oviedo satisfies this initial burden. He cannot return to Mexico and he has no citizenship or ties to any other country. *See Misirbekov v. Venegas*, 2025 WL 2450991, at *1 (S.D. Tex. Aug. 15, 2025) (finding good reason to believe there was no significant likelihood of removal where petitioner granted withholding relief to country of origin and did not have citizenship or ties to any other country). Additionally, Oviedo indicates that: 1) the Immigration Court has not designated an alternative country for removal; 2) the government has not sought to designate an alternate country for removal; and 3) ICE has not requested that he complete any paperwork or meet with consular officials from any third country. (Habeas Pet. ¶ 56.) Oviedo also relies on the small percentage of noncitizens granted withholding of removal that are eventually removed to a third country to show that removal in this instance is not reasonably foreseeable. (*Id.* ¶ 55.) Indeed, a grant of withholding relief "substantially increases the difficulty of" removal. *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398 (D.N.J. 2025); *Puertas-Mendoz v. Bondi*, 2025 WL 3142089, at *3 (W.D. Tex. Oct. 22, 2025) ("Very few people subject to withholding of removal or CAT relief are removed from the United States."). Based on the rarity of third country removals together with the grant of withholding relief to his only country of citizenship, and Respondents failure to identify other countries that have agreed to accept him, Oviedo has sufficiently demonstrated that there is no significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701.

9

### 1.3.3 Government's Rebuttal

Once the petitioner has met his burden of showing good reason to believe that his removal is not significantly likely in the reasonably foreseeable future, the burden shifts to the government to rebut the petitioner's showing. Here, the government's showing falls short. First, Respondents concede that inquiries sent to Guatemala, Honduras, and El Salvador have remained unanswered for over seven months. Though Deportation Officer Podgorni states that ICE ERO is "currently investigating" third-country removal options, no other suitable countries have been identified. Further, the bare assertion that ICE is investigating removal options "fail[s] to explain how they will follow up with the countries they have already reached out to," and fails to identify "concrete steps" they will pursue to effectuate removal. *Ahrach v. Baltazar*, 2025 WL 3227529, at *5 (D. Colo. Nov. 19, 2025). Other courts have found conclusory declarations that the government is merely "taking steps" to remove noncitizens insufficient to justify prolonged detention. *See Balouch v. Bondi*, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025) (finding "conclusory statements" about "pending" travel documents with no travel plans insufficient to continue detention); *Momennia v. Bondi*, 2025 WL 3011896, at *10 (W.D. Okla. Oct. 15, 2025) ("[M]ere intent to find a third country is too speculative to permit indefinite detention or to overcome [petitioner's] showing."); *Salazar-Martinez*, 2025 WL 3204807, at *2 ("[T]he mere possibility of repatriation to third countries, without concrete progress, is insufficient to justify continued detention."). Nor do Respondents give an expected timeframe for effectuating removal. Moreover, the process of procuring travel documents has not begun, therefore, a lengthy process likely awaits.

In sum, Oviedo provides good reason to believe his removal is not significantly likely to happen in the reasonably foreseeable future. And Respondents offer no concrete evidence

to the contrary. As such, Respondents are ordered to release Oviedo with conditions of supervision under 8 C.F.R. § 241.5 by **December 23, 2025**.

    2.    *Injunctive Relief*

Oviedo requests that ICE be enjoined from removing him to a third country without notice and an opportunity to be heard regarding removal to that country. Specifically, Oviedo argues the failure to provide constitutionally adequate safeguards before such a removal violates the Fifth Amendment, the CAT, and the APA. (Hab. Pet.¶¶ 98–109.) Respondents argue the Court should decline to address this issue given the pending litigation in the District of Massachusetts and because the Court lacks jurisdiction. (Resp. Br. at 19–24.)

    2.1    Comity

Respondents contend, based on principles of comity and judicial economy, that this Court should decline to address Oviedo's claim regarding third-country removals as he is a member of the certified class of *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (2025) and his claims are currently being litigated. But Respondents do not explain how Oviedo can obtain relief through the *D.V.D.* litigation if he is deported to a third country in the interim. Moreover, district courts have not found the ongoing *D.V.D.* litigation as precluding review of individual claims. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 732 (W.D. Wash. 2025); *Sagastizado v. Noem*, 2025 WL 2957002, at * 8 (S.D. Tex. Oct. 2, 2025); *Ortega v. Kaiser*, 2025 WL 2243616, at * 4 (N.D. Cal. Aug. 6, 2025). As such, I find *D.V.D.* does not prohibit addressing Oviedo's request for an injunction here.

## 2.2 Jurisdiction

Respondents point to several provisions of 8 U.S.C. § 1252 as preventing the Court from considering Oviedo's third-country removal claim. (Resp. Br. at 21–23.) First, Respondents invoke 8 U.S.C. § 1252(a)(4), which provides that:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the [CAT], except as provided in subsection (e).

8 U.S.C. § 1252(a)(4).

Respondents argue that § 1252(a)(4) bars review of Oviedo's claims regarding third-country removals because it is inherently a claim under CAT. But § 1252(a)(4) does not bar review "when a detained alien seeks relief that a court of appeals cannot meaningfully provide on petition for review of a final order of removal." *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 180 (3d Cir. 2020). In *E.O.H.C.*, the petitioners, Guatemalan nationals, challenged the government's ability to temporarily return them to Mexico while their applications for asylum were pending. *Id.* at 182. The petitioners argued that they would be tortured or persecuted in violation of CAT. *Id.* The district court dismissed the claims for lack of jurisdiction, and the Third Circuit Court of Appeals reversed. The court, analyzing the statutory history and scheme, found that § 1252(a)(4) does not bar review, it *channels* review into a single petition to the court of appeals. *Id.* at 188–90. In other words, § 1252(a)(4) does not strip jurisdiction over CAT claims that cannot meaningfully be addressed by a petition for review. *Id.* at 190.

Likewise, for Oviedo, there will be no opportunity for meaningful judicial review as contemplated by § 1252(a)(4) if he is removed to a third country—for which he has no final

removal order—without notice and an opportunity to be heard. Further, Oviedo is not asking the Court to question DHS' designation that a country is not likely to subject a detainee to torture. Nor he is seeking review of any CAT claim. *See Compere v. Nielsen*, 358 F. Supp. 3d 170, 177 n.8 (D.N.H. 2019) (finding § 1252(a)(4) inapplicable where petitioner was not seeking review of CAT claim denial). Rather, he is merely asking the Court to preserve his CAT protections and allow him the opportunity to fully present a CAT claim *before* he is removed. This does not involve determining whether he *is* entitled to CAT protection as to any particular country. As such, § 1252(a)(4) does not bar this Court's jurisdiction.

Respondents next argue that the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA") § 2242(d), codified at 8 U.S.C. § 1231, bars Oviedo's claims. FARRA implements CAT, and provides that "no court shall have jurisdiction to review the regulations adopted to implement this section, and nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the [CAT], . . . or any determination made with respect to the application of the policy . . . ." FARRA § 2242(d). As set forth above, Oviedo is not asking the Court to consider or review a CAT claim or to determine the applicability of the CAT to any particular country for which he may be removed. By its plain language, FARRA does not bar this Court's review.

Respondents next argue that 8 U.S.C. § 1252(b)(9) strips this Court of jurisdiction. Section 1252(b)(9) states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9).

13

The Supreme Court has rejected an expansive interpretation of this subsection, finding the jurisdictional bar inapplicable where detainees were not asking for review of an order of removal, challenging the decision to detain them in the first place or the decision to seek removal, or challenging any part of the process by which their removability would be determined. *Jennings v. Rodriguez*, 583 U.S.C. 281, 293–94 (2018). That analysis applies here. Oviedo does not challenge the determination that he is removable or a final order of removal. Nor does he claim a deficiency occurred in determining his removability. As such, § 1252(b)(9) does not prohibit review.

Lastly, Respondents invoke § 1252(g) as restricting jurisdiction of any decision or action to execute removal orders. (Resp. Br. at 23–24.) Section 1252(g) provides:

> Except as provided in this section . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

The Supreme Court interprets § 1252(g) narrowly, holding it applies only to the three discrete actions enumerated in the statute: the Attorney General's "decision or action" to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. American-Arab Anti Discrimination Committee*, 525 U.S. 471, 482 (1999) (emphasis in original) (internal quotation omitted). None of which are applicable here. Oviedo does not challenge the execution of the final removal order already entered against him, which provides for his removal to Mexico and defers that removal based on the IJ's grant of withholding. Nor does he challenge any discretionary decision of the Attorney General. Rather, he challenges his potential removal to a country for which he has no final removal order.

### 2.3 Due Process for Third-Country Removal

And finally, I address the merits of Oviedo's claim that he receive fair notice and a meaningful opportunity to be heard prior to deportation to a third country. (Hab. Pet. ¶¶ 98–109.)

The Due Process Clause of the Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law" and its protections entitles noncitizens to due process in deportation proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993); U.S. const. amend. V. "This entails a meaningful opportunity to be heard and to present evidence on one's own behalf." *Pronsivakulchai v. Holder*, 646 F.3d 1019, 1021 (7th Cir. 2011). "A noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Matthews v. Eldridge*, 424 U.S. 319, 349 (1976) and *Kossov v. I.N.S.*, 132 F.3d 405, 408 (7th Cir. 1998) (finding removal order to Russia where petitioners had no opportunity to present evidence concerning their fear of persecution in Russia was a "fundamental failure of due process")); *see also Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) (finding that "last minute designation" of removal country during proceedings "violated a basic tenet of constitutional due process: that individuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence").

Respondents do not offer a meaningful response to why Oviedo is not entitled to due process regarding a third-country removal. First, they argue nothing is preventing Oviedo from moving to reopen his immigration proceedings so that he may pursue a fear-based protection claim. The regulation's plain language, however, explains why such an endeavor

would be futile. *See* 8 C.F.R. § 1003.2(c). Section 1003.2(c) provides for a 90-day deadline from the date on which the administrative decision became final for filing a motion to reopen. It further states that the 90-day time limit does not apply when the motion involves reapplying for asylum or withholding deportation "in the country to which deportation has been *ordered*." 8 C.F.R. § 1003.2(c)(3). By its plain terms, Oviedo would have to receive what he requests in his petition—advance notice of deportation to file a new withholding claim.

Respondents also argue that Oviedo's request fails insofar as he is asking the Court to "second-guess" the Executive Branch's determination that he will not face persecution or be tortured in another country. (Resp. Br. at 24–24.) Again, Oviedo is not asking the Court to override or predetermine any CAT or withholding claim he may later pursue; he is instead seeking to preserve statutory protections to which he may be entitled. Protections he will effectively lose if he is deported to a third country without advance notice. Accordingly, in light of the ample case law supporting Oviedo's claim, I find he has a due process right to receive meaningful notice and an opportunity to present a fear-based claim before removal to a third country. Because I find the failure to supply notice would violate due process, I do not address whether its absence would violate the CAT or the APA.

## CONCLUSION

Oviedo challenges the constitutionality of his prolonged detention and his due process right to receive notice and an opportunity to be heard prior to deportation to a third country. He is entitled to relief on both claims.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Oviedo's petition for a writ of habeas corpus (Docket # 1) is **GRANTED**. Respondents are **ORDERED** to release

Oviedo by **December 23, 2025** with orders of supervision under 8 C.F.R. § 214.5. The parties are **FURTHER ORDERED** to file a joint status report informing the Court of the status of Oviedo's release.

**IT IS FURTHER ORDERED** that Oviedo receive notice and an opportunity to be heard prior to deportation to a third country.

**IT IS FURTHER ORDERED** that the Motion for a Temporary Restraining Order (Docket # 2) is **DISMISSED as moot**.

**IT IS FURTHER ORDERED** that the Motion to File a Surreply (Docket # 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 18th day of December, 2025.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge